

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHN R. LOVE, | Case No. CV 09-5460-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff John R. Love ("Plaintiff") seeks judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. For the reasons stated below, the Commissioner's decision is affirmed and the action is dismissed.

I.  **Factual and Procedural Background**

Plaintiff was born on December 2, 1960. (Administrative Record ("AR") at 36). He has a limited education and no relevant work experience. (AR at 36).

Plaintiff filed an application for SSI on February 4, 2003, alleging that he has been disabled since March 29, 1986, due to mental illness, including schizophrenia and an inability to be around people.[1] (AR at 252). The Social Security Administration denied Plaintiff's application. (AR at 117-20).

An administrative hearing was held before an administrative law judge on January 20, 2004. (AR at 38-45). Plaintiff, who was represented by counsel, did not personally appear at the hearing. (AR at 39). The administrative law judge found no good cause for Plaintiff's failure to appear. (AR at 142-43). Therefore, Plaintiff's request for hearing was dismissed. (AR at 142-43). On February 25, 2005, the Appeals Council remanded the matter to the administrative law judge. (AR at 147-49).

A hearing was conducted on August 25, 2005. (AR at 23; Joint Stipulation at 2). The administrative law judge issued a decision denying Plaintiff's application for SSI on November 16, 2005. (AR at 92-100). On September 15, 2006, the Appeals Council remanded Plaintiff's case for further development of the record. (AR at 165-67).

On May 14, 2007, a hearing was conducted by Administrative Law Judge Alexander Weir III ("the ALJ"). (AR at 46-64). Plaintiff was represented by counsel, but did not appear at the hearing, as he was in prison. (AR at 49). The ALJ issued a decision on June 5, 2007, denying Plaintiff's application, as Plaintiff failed to show good cause for failing to attend two consultative examinations. (AR at 107-09). On March 21, 2008, the Appeals Council remanded Plaintiff's case to the ALJ.

---

[1] Plaintiff filed a second application for SSI on May 20, 2004. (AR at 23, 67). This application was denied at the administrative level. (AR at 23).

2

On January 21, 2009, the ALJ conducted another administrative hearing. (AR at 65-81). Once again, Plaintiff who was represented by counsel, did not appear, because he was still incarcerated. (AR at 68). A vocational expert testified at the hearing. (AR at 77-80). On February 12, 2009, the ALJ issued a decision denying Plaintiff's request for SSI. (AR at 23-37). The ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since the date of his application, February 4, 2003 (step 1); (2) suffers from the severe impairments of schizoaffective disorder and a history of polysubstance dependence (step 2); (3) does not have any impairments that meet or equal the criteria of a listed impairment, including 12.03, 12.04, and 12.09 (step 3); (4) has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but is moderately restricted in dealing with the general public, has moderate limitations regarding attention and concentration, and cannot perform work involving complex tasks or instructions; (5) has no past relevant work that can be performed; but (6) is capable of performing other work that exists in significant numbers in the economy. (AR at 27-28, 34-37). The Appeals Council denied review on June 5, 2009. (AR at 9-11).

Plaintiff commenced this action for judicial review on July 30, 2009. On January 5, 2010, the parties filed a Joint Stipulation of disputed issues. Plaintiff contends that the ALJ failed to properly assess the extent of Plaintiff's mental limitations. Plaintiff seeks remand for payment of benefits or, in the alternative, remand for further administrative proceedings. (Joint Stipulation at 17). The Commissioner requests that the ALJ's decision be affirmed. (Joint Stipulation at 18). The Joint Stipulation has been taken under submission without oral argument.

3

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. *Lingenfelter*, 504 F.3d at 1035 (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

## III. DISCUSSION

### A. Plaintiff's Mental Impairment

Plaintiff contends that the ALJ erred in his evaluation of Plaintiff's mental impairment. In particular, Plaintiff faults the ALJ for improperly rejecting the opinions of two psychiatrists from the Parole Outpatient Clinic, Joseph Ortego, M.D. (AR at 310, 314-26, 772-77) and Gary Chase, M.D. (AR at 766).

//

Dr. Ortego's Records

Dr. Ortego began treating Plaintiff on July 15, 2005, shortly after Plaintiff was released from prison. (AR at 29, 310). Plaintiff reported hearing voices and that he suffered form paranoia and depression. (AR at 310). Dr. Ortego diagnosed Plaintiff with schizoaffective disorder and recommended that Plaintiff continue taking his medications, which included Remeron, Risperdal, and Zoloft. (AR at 29). Dr. Ortego opined that Plaintiff was "permanently disabled [with] chronic [auditory hallucinations]." (AR at 310).

Plaintiff returned to Dr. Ortego in August 2005. (AR at 777). During his examination, Plaintiff was alert and oriented x 3 (person, place and time). (AR at 777). Plaintiff stated that his medications were working, but his mood was described as "sad" and he was still hearing voices. (AR at 777).

On October 12, 2005, Dr. Ortego completed a Psychiatric Review Technique form ("PRTF"). (AR at 314-26). Dr. Ortego found that Plaintiff met the diagnostic paragraph "A" criteria for Listing 12.03 (psychotic disorder) and Listing 12.04 (affective disorder). (AR at 316-17); see 20 C.F.R. Part 404, Subpt. P, App. 1, 12.03 and 12.04. Dr. Ortego assessed Plaintiff with the following functional limitations under the paragraph "B" criteria: moderate restrictions in activities of daily living; marked restrictions in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and three episodes of decompensation, each of extended duration. (AR at 324). In addition, Dr. Ortego found that Plaintiff satisfied the alternative impairment-related functional limitations set forth in paragraph "C." (AR at 325).

//

1    In a chart note dated October 12, 2005, Dr. Ortego reported that
2  Plaintiff was alert, and oriented x 3. (AR at 776). Plaintiff was still
3  hearing mumbling voices and hissing sounds, but was taking his
4  medications. (AR at 776).
5    In January 2006, Plaintiff returned to Dr. Ortego after missing
6  appointments for several months. (AR at 774). Plaintiff, who had not
7  been compliant with his medications, reported feeling very paranoid. (AR
8  at 774).
9    Plaintiff continued to miss appointments with Dr. Ortego. (AR at
10 773). In March 2006, Plaintiff complained of major depression and
11 auditory hallucinations. (AR at 773). Plaintiff was experiencing poor
12 concentration, difficulty focusing, and diminished energy. (AR at 773).
13   After missing several months of his appointments, Plaintiff saw Dr.
14 Ortego in August 2006. (AR at 772). Plaintiff stated that he was
15 depressed. (AR at 772).

Dr. Chase's Record

Dr. Chase, who only provided a single chart note, saw Plaintiff on October 20, 2008. (AR at 766). Plaintiff went to the Parole Outpatient Clinic for a refill of his medications. (AR at 766). Plaintiff reported experiencing occasional paranoia and racing thoughts, but had no suicidal ideation or homicidal ideation. (AR at 766). Dr. Chase noted that Plaintiff was "[u]nable to tolerate the pressures of time and supervision." (AR at 766).

Legal Analysis

The Commissioner is directed to weigh medical opinions based in part on their source, specifically, whether proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Generally, more weight is given to the

6

opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. *See id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

The Commissioner must also consider whether a medical opinion is supported by clinical findings and is contradicted by other medical evidence of record. The Commissioner may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. *See Lester*, 81 F.3d at 831. If a treating professional's opinion is contradicted by an examining professional's opinion, which is supported by different independent clinical findings, the Commissioner may resolve the conflict by relying on the latter. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (ALJ may reject opinion of treating physician in favor of examining physician whose opinion rests of independent clinical findings). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. *Lester*, 81 F.3d at 830.

Here, the ALJ gave specific and legitimate reasons for rejecting Dr. Ortego's and Dr. Chase's opinions. (AR at 29-32, 35). For example, Dr. Ortego's initial report suggesting that Plaintiff was "permanently disabled" was conclusory and inadequately supported by clinical findings. (AR at 29, 310); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"); *see also Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th

7

Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ... or by objective medical findings"); *Tonapetvan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("[w]hen confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings"). Similarly, the limitations assessed by Dr. Ortego in the PRTF were inconsistent with Plaintiff's treatment records, which suggested only moderate restrictions. (AR at 30, 314-26, 329, 767-79, 772-77); *see* 20 CFR § 416.927(d) (treatment history, consistency with the record as a whole, and supportability of report affect weight accorded physician's report).

Although the ALJ did not expressly state that he was rejecting Dr. Chase's findings, the ALJ was not required to state any "magic words" before reaching his decision. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). An ALJ can satisfy the requirement of providing "specific and legitimate" reasons for rejecting the opinion of a treating physician by the "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 751. Here, the ALJ complied with *Magallanes* by discussing Plaintiff's medical history and treatments in detail. (AR at 28-32, 278-85, 287-90, 329, 331, 341, 346, 357-59, 380-82, 383-84, 390, 490, 712, 768-69, 779-80). Based on the ALJ's thorough summary of the medical evidence, it is reasonable to infer that the ALJ found little in the way of objective evidence to support Dr. Chase's extreme finding that Plaintiff was "[u]nable to tolerate the pressures of time and supervision." (AR at 766); *see Magallanes*, 881 F.2d at 751.

8

The opinions of the consultative examiners, clinical psychologist Steven I. Brawer, Ph.D. and psychiatrist Ernest A. Bagner, III, M.D., provide further support for the ALJ's evaluation of Plaintiff's mental impairment. (AR at 35, 736-48). In October 2008, Dr. Brawer conducted a psychological evaluation of Plaintiff at the request of the Commissioner. (AR at 736-41). Plaintiff complained that he has heard voices since 1989 and has been depressed since he was a child. (AR at 737). On an intelligence test, Plaintiff received a full scale IQ score of 72. (AR at 739). Plaintiff also underwent a mental status examination and the Minnesota Multiphasic Personality Inventory. (AR at 738-39). Dr. Brawer diagnosed Plaintiff as suffering from depressive disorder, NOS with psychotic features, and borderline intellectual functioning. (AR at 31). Dr. Brawer concluded that Plaintiff would have difficulty with detailed, varied, or complex tasks, mild to moderate limitations in the ability to effectively manage customary work stressors and persist for a regular workday, mild limitations in sustaining cooperative relationships with coworkers and supervisors, and mild limitations in the ability to sustain attention and concentration for extended periods of time. (AR at 740). In a Medical Source Statement, Dr. Brawer reported that Plaintiff would have "moderate" restrictions in his ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and respond appropriately to usual work situations and to changes in a routine work setting. (AR at 742-43). Dr. Brawer cited "mild" restrictions in Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers. (AR at 743).

On October 21, 2008, Dr. Bagner conducted a complete psychiatric evaluation, which included administering a mental status examination and

reviewing Plaintiff's medical and psychiatric records. (AR at 745-48). Dr. Bagner diagnosed Plaintiff with depressive disorder, NOS, and polysubstance abuse, in remission, and assessed a Global Assessment of Functioning scale of 60, indicating moderate symptoms or moderate difficulty with social and occupational functioning. (AR at 746-47); see Diagnostic and Statistical Manual of Mental Disorders (4th ed.) ("DSM-IV") at 32. Dr. Bagner opined that Plaintiff would have mild limitations interacting with supervisors, peers and the public, mild limitations maintaining concentration and attention and completing simple tasks, mild to moderate limitations handling normal stresses at work and completing complex tasks, and moderate to marked limitations completing a normal workweek without interruption. (AR at 748). Similarly, in a Medical Source Statement, Dr. Bagner found that Plaintiff would have mild restrictions in his ability to understand and remember simple instructions, carry out simple instructions, make judgments on simple work-related decisions, and interact appropriately with the public, supervisors, and co-workers. (AR at 742-43). Dr. Bagner assessed Plaintiff with mild to moderate restrictions in his ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, and respond appropriately to usual work situations and to changes in a routine work setting. (AR at 742-43).

It is clear that Dr. Brawer's and Dr. Bagner's evaluations were based on their own clinical findings made after they examined Plaintiff and reviewed the results of clinical tests, which Dr. Ortego and Dr. Chase had not considered. To the extent that the medical evidence from Plaintiff's treating sources conflicted with, or undermined Dr. Brawer's and Dr. Bagner's opinions, the ALJ was free to resolve the conflict as

he saw fit. *Andrews*, 53 F.3d at 1041 (ALJ has "sole[ ] province" to resolve conflicts between credible, yet conflicting, medical evidence); (AR at 35). Accordingly, the ALJ's evaluation of Plaintiff's mental impairment is supported by substantial evidence.

## IV. Conclusion

For the reasons stated above, the decision of the Commissioner is affirmed and this action is dismissed.

DATED: February 11, 2010

MARC L. GOLDMAN
--------------------------------
MARC L. GOLDMAN
United States Magistrate Judge